UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EVELIN M. HOLLAND,<br><br>Plaintiff,<br><br>-against-<br><br>NORTHWELL HEALTH, INC.<br><br>Defendants. | Civil. Action No.: ___________________<br><br>**COMPLAINT AND JURY TRIAL DEMAND** |

## PRELIMINARY STATEMENT

1. This is an action for employment discrimination, retaliation, unlawful wage withholding, and unlawful retaliation against a healthcare whistleblower, brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL"); New York Labor Law §§ 193 and 198 ("NYLL"); and New York Labor Law §§ 740 and 741 (New York's general and healthcare whistleblower statutes).

2. Plaintiff Evelin M. Holland is a fifty-year-old Hispanic female, a native of El Salvador, and a Certified Nursing Assistant ("CNA") who worked at Huntington Hospital, a Northwell Health, Inc. ("Northwell") facility, for approximately eighteen (18) years without a single disciplinary action.

3. On October 10, 2025, Northwell terminated Plaintiff's employment on a pretextual charge of "patient neglect" after she: (a) advocated for a Hispanic, Spanish-speaking, stroke-impaired patient who was being neglected by a non-Hispanic, U.S.-born CNA; (b) complained to management that the non-Hispanic CNA was failing to feed and care for that Hispanic patient; and (c) objected to practices she reasonably believed constituted both discriminatory mistreatment of a protected-class patient and improper quality of patient care in violation of law and endangering patient health and safety.

4. Defendant then compounded its unlawful conduct through a series of post-termination retaliatory acts, including contesting Plaintiff's unemployment insurance claim, refusing to pay her approximately four hundred (400) hours of accrued paid time off ("PTO") in violation of New York Labor Law and inducing her to participate in a sham internal grievance process.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over Plaintiff's Title VII claims pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 2000e-5(f)(3).

6. This Court has supplemental jurisdiction over Plaintiff's NYSHRL and New York Labor Law claims pursuant to 28 U.S.C. § 1367(a), as those claims arise from the same nucleus of operative facts as the federal claims.

7. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), because a substantial part of the events giving rise to the claims occurred at Huntington Hospital, 270 Park Avenue, Halesite, New York 11743, which lies within this District.

**ADMINISTRATIVE PREREQUISITES**

8. On August 5, 2026, Plaintiff timely filed a verified Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), New York District Office, against Northwell, designated EEOC Charge No. 520-2026-07812, alleging discrimination on the basis of national origin and retaliation.

9. On August 14, 2026, the EEOC issued Plaintiff a Notice of Right to Sue, advising that any federal lawsuit must be filed within ninety (90) days of receipt. A copy of the Notice of Right to Sue is annexed hereto.

10. This action is commenced within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue. Plaintiff has exhausted all administrative prerequisites to the filing of this action.

11. No administrative exhaustion is required for Plaintiff's NYSHRL, NYLL §§ 193 and 198, or NYLL §§ 740 and 741 claims.

**THE PARTIES**

12. Plaintiff Evelin M. Holland is a natural person residing at 148 Corey Place, Huntington Station, New York 11746.

13. Plaintiff is a Hispanic female of Salvadoran national origin and Latino/Hispanic ethnicity, born March 17, 1975.

14. At all relevant times, Plaintiff was an "employee" within the meaning of Title VII, 42 U.S.C. § 2000e(f); the NYSHRL, N.Y. Exec. Law § 292; NYLL § 190(2); and NYLL §§ 740(1)(a) and 741(1)(a).

15. Defendant Northwell Health, Inc. ("Northwell" or "Northwell Health") is a domestic not-for-profit corporation headquartered in New Hyde Park, New York, with a service address of 2000 Marcus Avenue, New Hyde Park, New York 11042. Northwell employs more than five hundred (500) employees and operates Huntington Hospital, an acute-care hospital located at 270 Park Avenue, Halesite, New York 11743.

16. Northwell Health is a "health care provider" within the meaning of NYLL § 741(1)(b).

17. At all relevant times, Defendant was an "employer" within the meaning of Title VII, the NYSHRL, NYLL § 190(3), and NYLL §§ 740(1)(b) and 741(1)(b), and acted through its officers, managers, agents, and employees, including those named herein.

## FACTS

**A. Plaintiff's Eighteen-Year Unblemished Employment**

18. Plaintiff was employed by Northwell as a CNA at Huntington Hospital for approximately eighteen (18) years, from in or about 2007 through her termination on October 10, 2025.

19. As a CNA, Plaintiff worked under the supervision of registered nurses to provide direct patient care, including ensuring patient comfort, assisting with activities of daily living, and monitoring patients for changes in condition.

20. Throughout her eighteen-year tenure, Plaintiff received satisfactory performance reviews and had no record of discipline.

21. During her employment, Plaintiff accrued paid time off ("PTO") in accordance with Defendant's written policies. By the date of her termination, Plaintiff had accrued approximately four hundred (400) hours of PTO.

22. Under Defendant's written policies, accrued PTO was a promised and earned benefit payable to employees upon separation from employment. Plaintiff and other CNAs reasonably understood accrued PTO to be earned wages payable upon termination.

**B. Plaintiff's Care of Francisco Soriano**

23. On or about September 20, 2025, Plaintiff reported for duty on the 5th Floor Med-Surg unit at Huntington Hospital.

24. One of the patients in the unit was Francisco Soriano, a native of El Salvador who had suffered a stroke that severely limited his motor abilities and speech. Mr. Soriano did not speak or understand English and had been hospitalized for approximately three months.

25. During Mr. Soriano's hospitalization, Plaintiff developed a close caregiver relationship with him. She regularly helped him bathe, dress, eat, and use the restroom, turned him to prevent bedsores, tidied his room, and changed his linens. Plaintiff was uniquely able to communicate with Mr. Soriano in Spanish.

**C. Plaintiff's Protected Complaints About MJ's Neglect**

26. On September 20, 2025, Mr. Soriano was assigned to the care of "MJ," a non-Hispanic, U.S.-born CNA.

27. Throughout that shift, MJ repeatedly failed to feed or attend to Mr. Soriano. On multiple occasions, Plaintiff found Mr. Soriano covered in food—on his robe, his bed, and the floor—because, due to his stroke-induced motor impairments, he was physically unable to feed himself, yet MJ had left him alone with his food tray.

28. At lunch, Plaintiff discovered that an untouched shrimp salad remained on Mr. Soriano's tray. After asking him in Spanish whether he intended to eat it—to which he responded "No. No. No."—Plaintiff cleaned him up and offered the untouched shrimp salad to Carly Anton, a Registered Nurse (a non-Hispanic, U.S.-born female) who accepted it. Plaintiff removed the shrimp salad from the room, consistent with a common, longstanding, and openly tolerated practice at the Hospital.

29. After lunch, Plaintiff observed MJ in Room 531 socializing with another patient rather than attending to Mr. Soriano.

30. Plaintiff complained directly to MJ about her failure to feed Mr. Soriano and about leaving him in a mess.

31. Plaintiff also complained to her direct supervisor, Theresa Bruno, about the lack of care being provided to Mr. Soriano—a Hispanic, Spanish-speaking patient—by MJ, a non-Hispanic CNA, and asked Ms. Bruno to speak with MJ about her conduct.

32. Plaintiff reiterated her complaints to senior Northwell employee "Brandi" (LNU) on September 22, 2025.

33. Plaintiff's complaints constituted protected activity under multiple statutes:

(a) **Title VII and NYSHRL:** Plaintiff was opposing what she reasonably believed to be discriminatory mistreatment of a Hispanic, Spanish-speaking patient by a non-Hispanic employee, and advocating on behalf of a patient on

the basis of his national origin and ethnicity;

(b) **NYLL § 740:** Plaintiff objected to, and disclosed to supervisors, activities, policies, and practices that she reasonably believed were in violation of law, rule, or regulation—including federal CMS Conditions of Participation for hospitals (42 C.F.R. Part 482), New York Public Health Law provisions governing patient rights and standards of care, and 10 NYCRR Part 405—and that created a substantial and specific danger to public health or safety, namely leaving a stroke-impaired patient without feeding assistance;

(c) **NYLL § 741:** Plaintiff, as a health care employee, disclosed and objected to activities, policies, and practices of her health care employer that she reasonably believed constituted improper quality of patient care.

**D. Defendant's Pretextual "Investigation" and Termination**

34. On September 22, 2025, Plaintiff was summoned to a meeting with Brandi. When Plaintiff attempted to raise MJ's neglect of Mr. Soriano, Brandi dismissed those concerns and focused solely on the removal of uneaten food from the room. Plaintiff explained that the practice was common, longstanding, and openly tolerated at the Hospital. Brandi responded: "Just don't let it happen again."

35. On October 10, 2025—eighteen (18) days after Plaintiff's protected complaints—Plaintiff was called into a second meeting with Brandi, who informed her that an "investigation" had been completed and that removing the food tray from Mr. Soriano's room constituted "patient neglect." Plaintiff was terminated effective that date.

36. The stated reason for termination was pretextual. The real reasons for Plaintiff's termination were (a) her race, ethnicity, and national origin; (b) her advocacy for and association with a Hispanic, Spanish-speaking patient; and (c) her protected complaints opposing MJ's discriminatory and substandard treatment of that patient.

**E. Disparate Treatment of Non-Hispanic Comparators**

37. MJ—the non-Hispanic, U.S.-born CNA whose refusal to feed Mr. Soriano resulted in repeated incidents of the patient being covered in food—was not investigated, disciplined, or terminated and remains employed by the Hospital.

38. Carly Anton—the non-Hispanic, U.S.-born RN who accepted the untouched shrimp salad and carried the tray to the break room—was not investigated, disciplined, or terminated and remains employed by the Hospital.

39. Upon information and belief, Northwell never investigated MJ or Ms. Anton concerning the events of September 20, 2025.

40. Similarly situated non-Hispanic employees routinely removed food from patient rooms for years without discipline, consistent with the common and openly tolerated practice at Huntington Hospital.

41. Defendant selectively enforced a purported food handling rule against Plaintiff—a Hispanic female of Salvadoran national origin who advocated for a Hispanic patient—while ignoring identical or worse conduct by non-Hispanic employees.

**F. Post-Termination Retaliation**

42. Following her termination, Defendant engaged in a continuing course of retaliation against Plaintiff designed to punish her for her protected complaints.

43. **Opposition to Unemployment Benefits.** Defendant opposed Plaintiff's claim for unemployment insurance benefits, falsely characterizing her termination as a termination for "misconduct," in order to deprive Plaintiff of the economic cushion to which she was entitled.

44. **Withholding of Accrued PTO.** Defendant refused and continues to refuse to pay Plaintiff approximately four hundred (400) hours of accrued paid time off upon separation. This PTO had been promised and earned pursuant to Defendant’s written policies and constitutes "wages" within the meaning of NYLL § 190(1).

45. **Sham Grievance Process.** Plaintiff availed herself of Northwell's internal grievance process. Northwell induced Plaintiff to participate in this process by promising that

it would genuinely reconsider the decision to terminate her, when in fact it had no intention of doing so. Upon information and belief, the true purpose of Northwell's internal grievance process is to insulate Northwell from liability rather than to provide meaningful relief to terminated employees.

46. Each of these post-termination acts constitutes a materially adverse action that would dissuade a reasonable employee from making or supporting a charge of discrimination or from engaging in whistleblower activity.

47. Each of these post-termination acts was undertaken in close temporal proximity and in direct causal connection to Plaintiff's protected activity.

**G. Damages**

48. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer: lost wages; lost benefits, including approximately 400 hours of accrued PTO; lost future earning capacity; damage to her career and professional reputation; and severe emotional distress, humiliation, anxiety, and mental anguish.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Discrimination Based on National Origin — Title VII

### 42 U.S.C. § 2000e-2(a)

49. Plaintiff repeats and realleges each allegation above as if fully set forth herein.

50. Plaintiff is a native of El Salvador and a member of a class protected by Title VII on the basis of national origin.

51. Plaintiff was qualified to perform her job and met Northwell's legitimate expectations.

52. Defendant took adverse employment actions against Plaintiff including, but not limited to, pretextual investigation, termination, contesting unemployment benefits, and refusing to pay accrued PTO.

53. Similarly situated non-Hispanic, U.S.-born employees were treated more favorably, and the circumstances give rise to an inference of discrimination.

54. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has sustained damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### Discrimination Based on Race/Ethnicity (Hispanic/Latino) — Title VII

### 42 U.S.C. § 2000e-2(a)

55. Plaintiff repeats and realleges each allegation above as if fully set forth herein.

56. Plaintiff is Hispanic/Latina and a member of a class protected by Title VII on the basis of race and ethnicity.

57. Defendant subjected Plaintiff to disparate scrutiny, investigation, discipline, and treatment because of her race and ethnicity, while similarly situated non-Hispanic employees were treated more favorably.

58. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has sustained damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### Associational Discrimination — Title VII

### 42 U.S.C. § 2000e-2(a)

59. Plaintiff repeats and realleges each allegation above as if fully set forth herein.

60. Title VII prohibits discrimination against an employee because of the employee's association with, or advocacy on behalf of, individuals of a protected race or national origin.

61. Plaintiff advocated for, assisted, cared for, and associated closely with Francisco Soriano, a Hispanic, Spanish-speaking patient of Salvadoran national origin.

62. Defendant took adverse employment actions against Plaintiff, in whole or in part, because of her association with and advocacy on behalf of Mr. Soriano, a member of a protected class, and because Plaintiff objected to the disparate treatment of Mr. Soriano by a

non-Hispanic co-worker.

63. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has sustained damages in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**

**Retaliation — Title VII**

**42 U.S.C. § 2000e-3(a)**

64. Plaintiff repeats and realleges each allegation above as if fully set forth herein.

65. Plaintiff engaged in protected activity by: (a) complaining to MJ about MJ's discriminatory mistreatment and neglect of Francisco Soriano, a Hispanic, Spanish-speaking patient; (b) complaining to her direct supervisor Theresa Bruno about MJ's conduct; and (c) complaining to senior Northwell employee Brandi about the same conduct.

66. Plaintiff reasonably and in good faith believed that MJ's conduct constituted discriminatory treatment of Mr. Soriano on the basis of his national origin and ethnicity.

67. Defendant was on notice of Plaintiff's protected complaints.

68. Defendant took multiple materially adverse actions against Plaintiff in close temporal proximity to, and causally connected to, her protected complaints, including:

(a) initiating a pretextual "investigation" within two days of Plaintiff's protected complaints;

(b) terminating Plaintiff's employment on October 10, 2025—eighteen days after her protected complaints and after eighteen years of discipline-free service;

(c) opposing Plaintiff's unemployment insurance claim;

(d) refusing to pay Plaintiff her accrued PTO;

(e) inducing Plaintiff to participate in a sham grievance process.

69. Each of these actions is independently sufficient to constitute a materially adverse action for purposes of Title VII retaliation.

70. As a direct and proximate result of Defendant's retaliation, Plaintiff has sustained damages in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**

**Discrimination Based on National Origin, Race/Ethnicity, and Association — NYSHRL**

**N.Y. Exec. Law § 296**

71. Plaintiff repeats and realleges each allegation above as if fully set forth herein.

72. Defendant's conduct constitutes unlawful discrimination against Plaintiff on the basis of her national origin (Salvadoran), race/ethnicity (Hispanic/Latina), and her association with and advocacy on behalf of a Hispanic patient, in violation of N.Y. Exec. Law § 296.

73. The NYSHRL, as amended, is to be construed liberally and expressly prohibits discrimination based on a plaintiff's association with members of a protected class.

74. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has sustained damages in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**

**Retaliation — NYSHRL**

**N.Y. Exec. Law § 296(7)**

75. Plaintiff repeats and realleges each allegation above as if fully set forth herein.

76. Plaintiff engaged in protected activity under the NYSHRL by opposing what she reasonably believed to be discriminatory mistreatment of a Hispanic patient and by complaining to management about such treatment.

77. Defendant retaliated against Plaintiff by subjecting her to a pretextual investigation, terminating her employment, opposing her unemployment benefits, refusing to pay her accrued PTO and subjecting her to a sham grievance process.

78. As a direct and proximate result of Defendant's retaliation, Plaintiff has sustained damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

### Unlawful Withholding of Wages — New York Labor Law §§ 193 and 198

79. Plaintiff repeats and realleges each allegation above as if fully set forth herein.

80. At all relevant times, Plaintiff was an "employee" and Defendant was an "employer" within the meaning of NYLL §§ 190(2) and 190(3).

81. Pursuant to Defendant's written policies, Plaintiff accrued approximately four hundred (400) hours of paid time off during her eighteen-year employment. Such accrued PTO constitutes "wages" within the meaning of NYLL § 190(1).

82. Upon separation, Defendant was obligated to pay Plaintiff the monetary value of her accrued, unused PTO.

83. Defendant's refusal to pay Plaintiff her accrued PTO upon separation constitutes an unlawful deduction from and/or withholding of wages in violation of NYLL § 193.

84. Defendant's conduct was willful within the meaning of NYLL § 198.

85. Plaintiff is entitled to recover the full amount of her unpaid wages; liquidated damages equal to one hundred percent (100%) of the unpaid wages; pre- and post-judgment interest; and reasonable attorneys' fees and costs pursuant to NYLL § 198(1-a).

## EIGHTH CAUSE OF ACTION

### Retaliation Against a Whistleblower — New York Labor Law § 740

86. Plaintiff repeats and realleges each allegation above as if fully set forth herein.

87. At all relevant times, Plaintiff was an "employee" and Defendant was an "employer" within the meaning of NYLL § 740(1).

88. Plaintiff engaged in protected activity under NYLL § 740(2) by disclosing to supervisors and objecting to activities, policies, and practices of Defendant that she reasonably believed were in violation of law, rule, or regulation—including federal and state healthcare regulations governing patient care—and that presented a substantial and specific danger to public health or safety, namely the neglect of a stroke-impaired patient left without

adequate feeding and attention.

89. Plaintiff's complaints to MJ, supervisor Theresa Bruno, and senior employee Brandi on September 20–22, 2025 constituted disclosures and objections within the meaning of NYLL § 740(2), as amended effective January 26, 2022.

90. Defendant took retaliatory personnel actions against Plaintiff within the meaning of NYLL § 740(1)(e) and (2), including initiating a pretextual investigation, terminating her employment, opposing her unemployment benefits, and refusing to pay her accrued PTO.

91. Plaintiff is entitled to all remedies available under NYLL § 740(5), including injunctive relief, reinstatement, back pay, front pay, compensation for lost benefits, civil penalties, punitive damages, and reasonable attorneys' fees and costs.

## NINTH CAUSE OF ACTION

## Retaliation Against a Health Care Whistleblower — New York Labor Law § 741

92. Plaintiff repeats and realleges each allegation above as if fully set forth herein

93. At all relevant times, Plaintiff was a "health care employee" and Defendant was a "health care employer" within the meaning of NYLL § 741(1).

94. Plaintiff engaged in protected activity under NYLL § 741(2) by disclosing to supervisors—including her direct supervisor Theresa Bruno and senior Northwell employee Brandi—activities, policies, and practices of her health care employer that she reasonably believed constituted improper quality of patient care, including the failure to feed a stroke-impaired patient with limited motor abilities, leaving him covered in food on multiple occasions.

95. Defendant took retaliatory personnel actions against Plaintiff because of her protected disclosures and objections, including initiating a pretextual investigation, terminating her employment, opposing her unemployment benefits, and refusing to pay her accrued PTO.

96. Plaintiff is entitled to all remedies available under NYLL § 741(3) and § 740(5), including injunctive relief, reinstatement, back pay, front pay, compensation for lost benefits, civil penalties, punitive damages, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Evelin M. Holland respectfully requests that this Court enter judgment in her favor and against Defendants, jointly and severally, as follows:

A. A declaratory judgment that Defendant's conduct violated Title VII, the NYSHRL, NYLL §§ 193 and 198, NYLL § 740, and NYLL § 741;
B. Reinstatement, or in the alternative, an award of front pay;
C. Back pay and all lost benefits;

D. Payment of approximately four hundred (400) hours of accrued paid time off wrongfully withheld upon separation, together with liquidated damages equal to one hundred percent (100%) of such unpaid wages pursuant to NYLL § 198(1-a);

E. Compensatory damages for emotional distress, humiliation, mental anguish, loss of enjoyment of life, and damage to professional reputation;

F. Punitive damages to the extent permitted by Title VII, the NYSHRL, and NYLL §§ 740 and 741;

G. Civil penalties pursuant to NYLL §§ 740 and 741;

H. Pre- and post-judgment interest;

I. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k), N.Y. Exec. Law § 297, NYLL § 198(1-a), and NYLL §§ 740(5) and 741(3); and

J. Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Dated: Huntington, New York
November 4, 2026

Respectfully submitted,
**MOSER LAW FIRM, P.C.**

By: *Steven J. Moser*
Steven J. Moser (SM6628)
453 W. Main Street
Huntington, New York 11743
Tel: (516) 671-1150
steven.moser@moserlawfirm.com
*Attorneys for Plaintiff Evelin M. Holland*